UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Milton F. Wright and Milton F. Wright Trucking, Inc.<br><br>Plaintiffs,<br><br>vs.<br><br>Synagro Mid-Atlantic, Inc., Synagro Technologies, Inc. and CDR Mid Atlantic<br><br>Defendants. | CIVIL ACTION NO. 01391<br>Judge Richard W. Roberts |

## DECLARATION OF STEPHEN TOFT

I, Stephen Toft, state on my oath as follows:

1. My name is Stephen Toft and I am the Regional Vice President of Synagro Mid-Atlantic, Inc. I have held this position since August 14, 2000.

2. Synagro Mid-Atlantic, Inc. (hereinafter "Synagro Mid-Atlantic") is a Delaware corporation, with its principal place of business located in Baltimore, Maryland.

3. I have reviewed Plaintiffs' Original Complaint and am familiar with the contracts upon which Plaintiffs bring their complaint.

4. Milton F. Wright Trucking, Inc. and Synagro Mid-Atlantic, Inc. entered into a Land Application Subcontracting Agreement on December 5, 2002 ("2002 Agreement")(attached as Exhibit 1) and a Land Application Subcontracting Agreement Amendment on May 1, 2004 ("2004 Agreement")(attached as Exhibit 2), collectively referred to as the "Land Application Agreements." While the 2002 Agreement could not be located in its entirety prior to the filing of this motion, I am familiar with both

{00012561.DOC}   1



agreements and am aware that the 2004 Agreement is simply a revised copy of the 2002 Agreement, such that Paragraph 2N is the same in both agreements.

5. Each of the respective agreements were sent from Synagro Mid-Atlantic's offices in Baltimore, Maryland to Plaintiffs' offices located in Silver Spring, Maryland. Following execution of the contracts, Plaintiffs returned the contracts to Synagro Mid-Atlantic's offices in Maryland.

6. I was personally involved in the negotiation of the Land Agreements. At no time during the negotiations of the Land Agreements, did any of the negotiations occur, or involve in any manner, the District of Columbia. I am unaware of a single meeting held, fax sent or received, or letter sent or received within the District of Columbia. Synagro Mid-Atlantic did not, and does not, have an office within the District of Columbia, and, to my knowledge, neither do Plaintiffs. All of my dealings with Plaintiffs occurred either in Baltimore, Maryland, or by phone from Baltimore, Maryland.

7. Plaintiffs were not asked or required to transport or spread biosolids from, within, or through District of Columbia at any time under the Land Application Agreements. With the exception of the Blue Plains project, all of the biosolids management services provided by Milfton F. Wright Trucking, Inc. involved biosolids that were generated solely in Maryland and spread in Maryland and Virginia. The only connection, which is tenuous at best, that Plaintiffs have to the District of Columbia is that one waste water treatment facility for the Blue Plains project is located within the District of Columbia. Despite this, Plaintiffs were never responsible for entering the District of Columbia to obtain the biosolids. Rather, these biosolids were transported into Maryland or Virginia by a third party and then delivered to Milton F. Wright Trucking, Inc. for spreading. In

other words, Plaintiffs were never required to even enter the District of Colombia, much less perform services therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 12th day of August, 2005.

_____
Stephen Toft

*Attachment #5*

# LAND APPLICATION SUBCONTRACTING AGREEMENT /PGW/

THIS AGREMENT, is made this 5ᵗʰ day of ~~September~~ *December S.R.II* 2002, by and between Milton F. Wright Trucking, Inc. (Wright) having its place of business at 11307 Baritone Court, Silver Spring, Maryland 20901 and Synagro Mid-Atlantic, Inc., a Delaware Corporation, having it place of business at 7014 E. Baltimore Street, Baltimore, MD 21224.

1. RELATIONSHIP OF PARTIES

The parties intend that an independent contractor relationship be created by this contract. Synagro is interested in land application services from time-to-time, as both parties shall mutually agree. Wright is not to be considered an agent or employee of Synagro for any purpose, and the employees of Wright are not entitled to any of the benefits that Synagro provides for owner's employees. Further, Wright is fully responsible for ensuring compliance with all applicable health and safety regulations during its land application services.

2. RIGHTS AND RESPONSIBILITIES

Synagro is in of need subcontracting spreading services and Wright is willing and able to provide such services to Synagro, and the two parties do hereby agree as follows:

A. This Agreement, together with any appendices, which may be attached and incorporated hereto, constitutes the entire agreement between Synagro and Wright and shall govern to the exclusion of all written or oral proposals and all other communications between the parties relating to the subject matter of this Agreement, including any documents emanating from Wright. No waivers to the terms and conditions set forth herein shall be granted unless submitted in writing by the requesting party.

B. Wright shall provide subcontracting services as described in Appendix A; shall supply the means of spreading biosolids and incorporating biosolids and ancillary services to include pasture dragging, bush – hogging etc., and shall pay for all costs incidental to or related to spreading and incorporation including, but not limited to, the costs of labor, fuel, tractor tires, repairs, insurance, and taxes unless otherwise stated in Appendix A.

C. Wright shall maintain comprehensive general liability and commercial automotive liability insurance in an amount which shall meet all applicable requirements of the prime contract as set forth in Appendix A and workers' compensation insurance as required by statute. Furthermore, Synagro shall be


EXHIBIT C-1

reasonable attorney's fees. The obligation to indemnify shall survive expiration or termination of this Agreement by either party for any reason.

J. Violations of Environmental Laws

1. In addition to the indemnification obligations set forth herein, Wright agrees that if, during the performance of this subcontract, it or any of its employees or agents is involved in any accident or incident, including, but not limited to, a biosolids spill, which gives rise to civil or criminal (misdemeanor or felony) charges alleging one or more violations of any state or federal law, statute, ordinance or regulation, the purpose of which in whole or in part is the protection of the environment, the following shall apply:

(I). Wright shall notify Synagro immediately of such incident;

(ii). Wright shall not make any statements to the charging authority concerning the incident without permission from Synagro or Synagro's counsel;

(iii). Wright shall appear and assume full responsibility for the incident in its own name before the charging authority and agrees not to look to Synagro for indemnification and/or reimbursement in connection with the incident.

K. Payments

Wright shall receive payment as specified in Appendix A.

L. General

Neither party to this Agreement shall have the authority to bind the other under any agreement or understanding with a third party. Any invalidity of any provisions cited herein shall not affect the validity of any other of its provisions.

M. Termination

Synagro may terminate this contract immediately upon the breach by Wright of any provision of this Agreement and may seek all legal and equitable remedies available. Beyond default of these provisions, either party may terminate this agreement with 30 days advance notice.

N. This agreement shall be governed by the laws of the State of Maryland, Including all rules and remedies as set forth under the State's Uniform Commercial Code, except to the extent that the provisions of the agreement are

APPENDIX A

SUBCONTRACTING AGREEMENT

SERVICES TO BE PERFORMED:

1. Biosolids for the Western ~~Maryland~~ *Synagro Projects* as mutually agreed upon by the parties shall be applied on land deemed appropriate commencing on or about September, _____ 2002, and ending upon the termination by either party as stated in "Section L – Termination" of this Agreement.

   A. Wright's rate of pay shall be ~~$5.75~~ *6.00* /per ton for spreading ~~120~~ – 160 tons on land permitted by Synagro.

   B. Wright's rate of pay shall be ~~$5.50~~ *5.75* / per ton for spreading ~~160~~ – 200 tons on land permitted by Synagro.

   C. Wright's rate of pay shall be ~~$5.25~~ *5.50* /per ton for spreading ~~200~~ – 240 tons on land permitted by Synagro.

   ~~D. Wright's rate of pay shall be $5.00/per ton for spreading 240 – 280 tons on land permitted by Synagro.~~ *INSERT*

   ~~E. Wright's rate of pay shall be $4.25/per ton for spreading 280 – 360 tons on land permitted by Synagro.~~ *few by MPW*

   ~~F. Wright's rate of pay shall be agreed to at a later date after permit modifications are made.~~

2. Synagro's Responsibilities:

   A. Digested or Lime stabilization to 40 CFR Part 503 Class B standards and vector attraction reduction Option 6 (alkaline addition).

   B. All Synagro forms required to be completed by Wright.

   C. Completed Pre-Operating Checklist and field flagging for Synagro-permitted sites.

3. Wright Responsibilities:

   A. All labor, fuel and equipment to spread biosolids and incorporate into the ground according to all federal, state and local regulations and permit requirements and according to the hauling schedule designated by Synagro. In the event of Wright working under Synagro's held permits,

Wright understands and recognizes that Synagro is responsible for scheduling and that Wright must abide by Synagro's schedule and Synagro's Pre-Operating Checklist procedure prior to commencing biosolids applications on a Synagro permitted site.

B.  All management necessary to complete work in a manner that is satisfactory to Synagro, federal, state and local government agencies, farmers, and the general public. This includes but is not limited to:

(1)  Safe and courteous operations of all equipment at all times.

(2)  Application in accordance with Synagro field scheduling, flagging and Pre-Operating Checklist when on permitted sites.

(*)  Compliance with all federal, state and local regulations and permit requirements. This includes but is not limited to applying biosolids evenly across the field at the allowed application rate specified by permit conditions and not applying in any buffer zones, restricted areas, and unpermitted areas.

(*)  Incorporation of biosolids into the ground within the time period specified by the permit.

(*)  Dragging of pasture fields and mowing as required.

(*)  Prevent tracking out of mud and biosolids onto the roadways during field operations and equipment moves and correcting immediately if tracking occurs.

(*)  Any other field work as required to satisfy regulatory or farmers requests.

(*)  Reporting work site visitors to Synagro if related to the project.

(*)  Accurate and timely completion and submittal of all paperwork to Synagro's Project Manager as required by federal, state and local agencies and Synagro. For Synagro permitted sites, for biosolids removed directly from WWTP, Wright shall submit on weekly basis a Synagro completed Daily Report and a copy of the scale tickets which indicate the state, county, site and field where the biosolids were applied and the date when the biosolids were applied.

C.  Spreading Responsibilities:

(1)  Wright will provide all equipment necessary to land apply biosolids according to state permit requirements.
(2)  Wright will provide Synagro with completed paperwork.
(3)  Wright will provide transportation to move their spreading equipment as needed.

-365 -1029

    (4)    Wright will need to execute a certification statement as required by 40 CFR Part 503.

    E.    Provide the following insurance coverage naming Synagro as an additional insured:

| | |
|---|---|
| Comprehensive General Liability | $2,000,000.00 |
| Automobile Liability | 1,000,000.00 |
| Worker's Compensation and Employer's Liability | Per Statute |
| Occupational Accident | Per Statute |

    F.    Recognition of the fact that there is no minimum guarantee of the quantity of biosolids that will be provided during the term of this contract nor specific times of application which shall be mutually agreed upon by the parties.

    G.    Recognition that ~~Arthur Lewis~~ is Synagro's primary contact and should receive all notices. Synagro Technologies, Inc.'s General Counsel should be copied on any violation or contractual issues.

WITNESS:

_____
Secretary

By: _____

SYNAGRO MID-ATLANTIC, INC.

Stephen R. Toft
Vice President

WITNESS:

_____
Secretary

By: _____

Milton F. Wright Trucking, Inc.

Milton Wright
President

CC: Lawson
Price
Sheehan

# LAND APPLICATION SUBCONTRACTING AGREEMENT
# AMENDMENT

THIS AGREMENT, is made this 1ST day of May, 2004 by and between Milton F. Wright Trucking, Inc. (Wright) having its place of business at 11307 Baritone Court, Silver Spring, Maryland 20901 and Synagro Mid-Atlantic, Inc., a Delaware Corporation, having it place of business at 7014 E. Baltimore Street, Baltimore, MD 21224.

1.  **RELATIONSHIP OF PARTIES**

    The parties intend that an independent contractor relationship be created by this contract. Synagro is interested in land application services from time-to-time, as both parties shall mutually agree. Wright is not to be considered an agent or employee of Synagro for any purpose, and the employees of Wright are not entitled to any of the benefits that Synagro provides for owner's employees. Further, Wright is fully responsible for ensuring compliance with all applicable health and safety regulations during its land application services.

2.  **RIGHTS AND RESPONSIBILITIES**

    Synagro is in of need subcontracting spreading services and Wright is willing and able to provide such services to Synagro, and the two parties do hereby agree as follows:

    A. This Agreement, together with any appendices, which may be attached and incorporated hereto, constitutes the entire agreement between Synagro and Wright and shall govern to the exclusion of all written or oral proposals and all other communications between the parties relating to the subject matter of this Agreement, including any documents emanating from Wright. No waivers to the terms and conditions set forth herein shall be granted unless submitted in writing by the requesting party.

    B. Wright shall provide subcontracting services as described in Appendix A; shall supply the means of spreading biosolids and incorporating biosolids and ancillary services to include pasture dragging, bush – hogging etc., and shall pay for all costs incidental to or related to spreading and incorporation including, but not limited to, the costs of labor, fuel, tractor tires, repairs, insurance, and taxes unless otherwise stated in Appendix A.

    C. Wright shall maintain comprehensive general liability and commercial automotive liability insurance in an amount which shall meet all applicable requirements of the prime contract as set forth in Appendix A and workers'


EXHIBIT C-2

compensation insurance as required by statute. Furthermore, Synagro shall be supplied with the original certificate, or certificates evidencing such insurance and shall be named as an additional insured on all applicable policies. It is further necessary that subcontractor's insurance company agree to notify Synagro of policy cancellation thirty (30) days prior to such cancellation. Payment for spreading services will not be made by Synagro unless and until such insurance is in force and a valid, original certificate of insurance is submitted to Synagro naming Synagro as an additional insured.

D. Wright shall at its sole cost and expense, obtain and comply with all necessary licenses and authorizations as required by all applicable federal, state and local laws and regulations, unless otherwise stated in Appendix A, and shall at Synagro's request allow inspection of said permits, licenses and authorizations.

E. Wright shall comply with all applicable federal, state, and local laws and regulations, requirements and permits, including but not limited to: 40 CFR Part 503 Standards for The Use or Disposal of Sewage Sludge; Title 26 Subtitle 04 Chapter 06 Maryland Department of Environment Sewage Sludge Management Regulation; Parts 40, 382, 383, 387, 390-397 of Subchapter B, Chapter 3, Title 49 of the Code of Federal Regulation and state modifications to the FMCSR; and federal and state regulation regarding Occupational Safety and Health. At Synagro's request, Wright shall permit Synagro to inspect without prior notice to determine compliance with all applicable federal, state and local laws and regulations. Any inspection by Synagro shall not be considered in any way as a waiver of Wright's compliance obligations and liabilities hereunder.

F. Equipment will be operated in a safe and courteous manner at all times, and operators shall be fully qualified to perform the work.

G. For Land Application sites where Synagro is the permit holder:

1. Wright shall apply biosolids in strict accordance with Synagro field scheduling, flagging and Pre-Operating Checklist when on farm site or any other Synagro permitted site should Synagro permit Wright to use such permitted sites.

2. Wright shall cooperate with Synagro to provide specified paperwork to Synagro's Project Manager in an accurate, complete and timely manner.

3. Wright shall be responsible to communicate daily with Synagro's Project Manager regarding progress made in spreading off-loaded biosolids and incorporating applied biosolids as permits require. Synagro will advise Wright in advance of spreading of any fields where biosolids incorporation is not in occurrence. Synagro's Project Manager shall be notified immediately of any events which may impact the ability of Wright to spread all of the off-loaded or

stored biosolids and incorporate applied biosolids by the completion of workday. These events may include but are not limited to equipment breakdowns or accidents, employee injury and adverse weather conditions. If Synagro is required to mobilize equipment or people to spread off-loaded biosolids and incorporate applied biosolids to meet federal, state and local requirements, Synagro reserves the right to deduct the full cost of such operations from Wright's invoices.

4. Wright shall be responsible for immediately communicating to Synagro's Project Manager any federal, state and local regulatory inspections, farmers requests, odor complaints, and citizen inquiries, providing as much detail as possible about the inspection, request or inquiry. Wright shall defer all responses to such events to Synagro's Project Manager. Failure to comply shall be grounds for default and termination of the agreement at Synagro's discretion.

5. Wright shall notify Synagro's Project Manager immediately of any activity conducted by Wright which has or may violate federal, state or local regulations, requirements or permits. This includes but is not limited to over-application or biosolids, application of biosolids within the buffer zones or restricted areas, spillage of biosolids within the buffer zones or the restricted areas. If Synagro is required to mobilize equipment or people in order to correct such violation in a timely manner, Synagro reserves the right to deduct the full cost of such operations from Wright's invoice.

H. For Land Application Sites where Wright is the permit holder:

1. Wright shall apply biosolids in strict accordance with applicable laws and regulations on Wright permitted sites.

2. Wright will be responsible for field flagging, permitting land, pay fees required for permitting and application of biosolids (other than the new fees proposed in Virginia).

3. Wright will provide required progress reports to the State and Synagro.

I. Indemnification

Wright shall indemnify, defend and hold harmless Synagro and its employees and agents to the fullest extent permitted by law against all liability to third parties due to Wright's failure to comply with the terms of this Agreement or the terms applicable permits, federal, state, and local laws and regulations (including environmental laws and regulations), or due to the fault, negligence, in whole or in part, of Wright's or its employees or agents. Such indemnification shall include

reasonable attorney's fees. The obligation to indemnify shall survive expiration or termination of this Agreement by either party for any reason.

J. Violations of Environmental Laws

1. In addition to the indemnification obligations set forth herein, Wright agrees that if, during the performance of this subcontract, it or any of its employees or agents is involved in any accident or incident, including, but not limited to, a biosolids spill, which gives rise to civil or criminal (misdemeanor or felony) charges alleging one or more violations of any state or federal law, statute, ordinance or regulation, the purpose of which in whole or in part is the protection of the environment, the following shall apply:

(I). Wright shall notify Synagro immediately of such incident;

(ii). Wright shall not make any statements to the charging authority concerning the incident without permission from Synagro or Synagro's counsel;

(iii). Wright shall appear and assume full responsibility for the incident in its own name before the charging authority and agrees not to look to Synagro for indemnification and/or reimbursement in connection with the incident.

K. Payments

Wright shall receive payment as specified in Appendix A.

L. General

Neither party to this Agreement shall permit lands for biosolids application if those lands are included in the second's party permit. However, Wright may permit lands that were included in BFI, CDR, or Bio Gro's permits if the landowner no longer honors the agreement and does not consider them selves to have an agreement with SYNAGRO.

M. Termination

Synagro may terminate this contract immediately upon the breach by Wright of any provision of this Agreement and may seek all legal and equitable remedies available. Beyond default of these provisions, either party may terminate this agreement with 30 days advance notice.

N. This agreement shall be governed by the laws of the State of Maryland, including all rules and remedies as set forth under the State's Uniform Commercial Code, except to the extent that the provisions of the agreement are clearly inconsistent therewith. The parties further agree that any legal proceedings arising out of or relating to the agreement shall be conducted in the State of Maryland.

O. Neither party may assign this contract without permission of the other party, except where such assignment is to a parent, subsidiary or affiliated entity.

Witness:

_____
Secretary

SYNAGRO MID-ATLANTIC, INC.

By: _____
Stephen Toft
Vice President

Witness:

_____
Secretary

Milton F. Wright Trucking, Inc.

By: _____
President

## APPENDIX A

## SUBCONTRACTING AGREEMENT - AMENDMENT

SERVICES TO BE PERFORMED:

1.  Biosolids for any and all Synagro projects as mutually agreed upon by the parties shall be applied on land deemed appropriate commencing on or about April 1, 2004, and ending upon the termination by either party as stated in **"Section L – Termination"** of this Agreement. The amendment to this agreement makes all subcontract hauling and spreading agreements before April, 2004 null and void.

    A.  Wright's rate of pay shall be **$6.00/per ton** for spreading 160 tons or less on land permitted by Synagro.

    B.  Wright's rate of pay shall be **$5.75/ per ton** for spreading 160 – 200 tons on land permitted by Synagro.

    C.  Wright's rate of pay shall be **$5.50/per ton** for spreading 200 tons or more on land permitted by Synagro.

    D.  Wright's rate of pay shall be **$8.00/per ton** for spreading 160 tons or less on land permitted by Wright.

    E.  Wright's rate of pay shall be **$7.75/per ton** for spreading 160-200 tons on land permitted by Wright.

    F.  Wright's rate of pay shall be **$7.50/per ton** for spreading 200 tons or more on land permitted by Wright.

2.  Synagro's Responsibilities:

    A.  Digested or Lime stabilization to 40 CFR Part 503 Class B standards and vector attraction reduction Option 6 (alkaline addition).

    B.  All Synagro forms required to be completed by Wright.

    C.  Completed Pre-Operating Checklist and field flagging for Synagro-permitted sites.

    D.    The **$2.50** Virginia land application fee will be paid by the generator of the biosolids. A copy of Wright's monthly report will be provided to SYNAGRO and to the biosolids generator.

3. Wright Responsibilities:

    A.    All labor, fuel and equipment to spread biosolids and incorporate into the ground according to all federal, state and local regulations and permit requirements and according to the hauling schedule designated by Synagro. In the event of Wright working under Synagro's held permits, Wright understands and recognizes that Synagro is responsible for scheduling and that Wright must abide by Synagro's schedule and Synagro's Pre-Operating Checklist procedure prior to commencing biosolids applications on a Synagro permitted site.

    B.    All management necessary to complete work in a manner that is satisfactory to Synagro, federal, state and local government agencies, farmers, and the general public. This includes but is not limited to:

(1) Safe and courteous operations of all equipment at all times.

(2) Application in accordance with Synagro field scheduling, flagging and Pre-Operating Checklist when on permitted sites.

(*) Compliance with all federal, state and local regulations and permit requirements. This includes but is not limited to applying biosolids evenly across the field at the allowed application rate specified by permit conditions and not applying in any buffer zones, restricted areas, and unpermitted areas.

(*) Incorporation of biosolids into the ground within the time period specified by the permit.

(*) Dragging of pasture fields and mowing as required.

(*) Prevent tracking out of mud and biosolids onto the roadways during field operations and equipment moves and correcting immediately if tracking occurs.

(*) Any other field work as required to satisfy regulatory or farmers requests.

(*) Reporting work site visitors to Synagro if related to the project.

(*) Accurate and timely completion and submittal of all paperwork to Synagro's Project Manager as required by federal, state and local agencies and Synagro. For Synagro permitted sites, for biosolids

removed directly from WWTP, Wright shall submit on weekly basis a Synagro completed Daily Report and a copy of the scale tickets which indicate the state, county, site and field where the biosolids were applied and the date when the biosolids were applied.

    C.    Spreading Responsibilities:

        (1)    Wright will provide all equipment necessary to land apply biosolids according to state permit requirements.
        (2)    Wright will provide Synagro with completed paperwork.
        (3)    Wright will provide transportation to move their spreading equipment as needed.
        (4)    Wright will need to execute a certification statement as required by 40 CFR Part 503.

    D.    Provide the following insurance coverage naming Synagro as an additional insured:

| | |
|---|---|
| Comprehensive General Liability | $2,000,000.00 |
| Automobile Liability | 1,000,000.00 |
| Worker's Compensation and Employer's Liability | Per Statute |
| Occupational Accident | Per Statute |

    E.    Recognition of the fact that there is no minimum guarantee of the quantity of biosolids that will be provided during the term of this contract nor specific times of application which shall be mutually agreed upon by the parties. However, there is a target quantity goal of **50 Loads** per week.

    F.    Recognition that **John Thomas (Virginia) and Owen Sheehan (Maryland)** are Synagro's primary contacts and should receive all notices. Synagro Technologies, Inc.'s General Counsel should be copied on any violation or contractual issues.

WITNESS:

*/s/ [signature]*
Secretary

SYNAGRO MID-ATLANTIC, INC.

By: */s/ [signature]*
Stephen R. Toft
Vice President

WITNESS:                                              Milton F. Wright Trucking, Inc.

_____          By:  _____
Secretary                                                          President